# Exhibit G

3500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,       : Docket No. CR 05-100

    v.

ANTWUAN BALL, DAVID WILSON,   : Washington, DC
GREGORY BELL, DESMOND
THURSTON, JOSEPH JONES, and     March 21, 2007
DOMINIC SAMUELS,         : 9:29 a.m.

    Defendants.

**VOLUME 21 - MORNING SESSION**
**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE RICHARD W. ROBERTS**
**UNITED STATES DISTRICT COURT JUDGE, and a JURY**

APPEARANCES:

For the United States:    UNITED STATES ATTORNEY'S OFFICE
    Glenn S. Leon, Assistant United
    States Attorney
    Ann H. Petalas, Assistant United
    States Attorney,
    Gilberto Guerrero, Assistant
    United States Attorney
    555 4th Street
    Washington, DC 20001
    202 305.0174

For Defendant    CARNEY & CARNEY
Antwuan Ball:    John James Carney, Esq.
    South Building
    601 Pennsylvania Avenue, N.W.
    Washington, DC 20004
    202.434.8234

Scott L. Wallace, RDR, CRR
Official Court Reporter

---

3501

APPEARANCES (Cont.)

For Defendant    TIGHE, PATTON, ARMSTRONG,
Antwuan Ball    TEASDALE, PLLC
    Steven Carl Tabackman, Esq
    1747 Pennsylvania Avenue, NW
    Suite 300
    Washington, DC 20036
    202 454.2811

For Defendant    LAW OFFICE OF JENIFER WICKS
David Wilson    Jenifer Wicks, Esq.
    503 D Street NW, Suite 250A
    Washington, DC 20001
    202.326.7100

    GARY E PROCTOR, LLC
    Gary E. Proctor, Esq
    6065 Harford Road
    Baltimore, MD 21214
    410 444 1500

For Defendant    LAW OFFICE OF JAMES W. BEANE
Gregory Bell    James W. Beane, Jr., Esq
    2715 M Street, N W
    Suite 200
    Washington, DC 20007
    202 333 5905

For Defendant    LAW OFFICE OF JONATHAN ZUCKER
Desmond Thurston    Jonathan Seth Zucker, Esq
    514 10th Street, NW
    9th Floor
    Washington, DC 20004
    202 624 0784

For Defendant    LAW OFFICE OF ANTHONY MARTIN
Joseph Jones    Anthony Douglas Martin, Esq.
    7841 Belle Point Drive
    Greenbelt, MD 20770
    301 220 3700

    LAW OFFICE OF ANTHONY ARNOLD
    Anthony Darnell Arnold, Esq
    One Research Court
    Suite 450
    Rockville, MD 20852
    301 519 8024

Scott L. Wallace, RDR, CRR
Official Court Reporter

---

3502

APPEARANCES (Cont )

For Defendant    LAW OFFICES OF A EDUARDO BALAREZO
Dominic Samuels    A. Eduardo Balarezo, Esq
    400 Fifth Street, NW
    Suite 300
    Washington, DC 20001
    202 639 0999
    and
    William B Purpura, Esq
    8 East Mulberry Street
    Baltimore, MD 21202
    410 576 9351

Court Reporter    Scott L Wallace, RDR, CRR
    Official Court Reporter
    Room 6814, U S Courthouse
    Washington, DC 20001
    202 326 0566

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription

Scott L. Wallace, RDR, CRR
Official Court Reporter

---

3503

1    **MORNING SESSION, MARCH 21, 2007**

2    (9 15 a m )

3    THE COURT  Mr Purpura, are you ready for the jury?

4    Mr Purpura, are you ready for the jury?

5    MR PURPURA  Yes, Judge  Thank you

6    THE COURT  All right  Let's bring them in

7    MR PURPURA  I apologize  My back is literally to you

8    It's not my intent

9    (Jury in at 9 31 a m )

10    THE COURT  Good morning, ladies and gentlemen

11    THE JURY PANEL  Good morning

12    THE COURT  Welcome back  It's good to have all of you

13    back  We're ready to resume

14    Mr Purpura, do you care to cross?

15    MR PURPURA  I do  Thank you, Your Honor

16    Ms Romero, could we have the ELMO on, please

17    THE DEPUTY CLERK  Yes

18    CROSS-EXAMINATION OF HORACE SMITH

19    BY MR PURPURA

20    **Q.**  Mr Smith, just a few minutes' worth of questions, as

21    I've promised everybody  You were asked a lot -- a lot of

22    questions about the amount of drugs you were dealing  Do you

23    remember all those questions?

24    **A.**  Yes

25    **Q.**  Okay  I'm just going to focus on what you actually pled

Scott L. Wallace, RDR, CRR
Official Court Reporter

3564

1   **A.**   Well, first I saw a young lady that I didn't know and I
2   felt maybe she knew where something was. And I don't know --
3   remember the young lady or anything. But I saw a guy in a van.
4   That was it.
5   **Q.**   What kind of van was it?
6   **A.**   I think it was a white van.
7   **Q.**   What did you see that guy in the white van do?
8   **A.**   I saw a young lady go to the van and that was it.
9   **Q.**   Did you ever approach the van?
10  **A.**   No.
11  **Q.**   Why not?
12  **A.**   Because he didn't -- I didn't know him. I just was
13  looking around to see if I could see anything.
14  **Q.**   Did you get drugs that day?
15  **A.**   No, I didn't.
16  **Q.**   Did you eventually get them at all?
17  **A.**   Yes.
18  **Q.**   Now, was there another time that you saw that white van
19  again?
20  **A.**   Yes.
21  **Q.**   How much time went by between the first time you saw the
22  white van and the second time?
23  **A.**   Probably about two days or something.
24  **Q.**   And tell us about that. Where did you go that day?
25  **A.**   Same place.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3565

1   **Q.**   What were you looking for?
2   **A.**   Crack cocaine.
3   **Q.**   And did you see the white van?
4   **A.**   Yes.
5   **Q.**   Tell us what happened.
6   **A.**   I asked the young lady, could she get something for me?
7   **Q.**   You asked the young lady to get what for you?
8   **A.**   Crack.
9   **Q.**   And what did you see that young lady do?
10  **A.**   I saw her go to the van.
11  **Q.**   Who did you see inside the van?
12  **A.**   I didn't really see who was in the van at that time.
13  **Q.**   Did you ever approach the person in the van?
14  **A.**   Not then, no.
15  **Q.**   Before you asked this woman to get crack cocaine for you,
16  did you ever approach the person in the van?
17  **A.**   No. I asked her to get it for me.
18  **Q.**   And when she -- how long was she gone from you?
19  **A.**   She wasn't gone long.
20  **Q.**   And when she came back, what happened?
21  **A.**   She gave me the drugs.
22  **Q.**   How much did you purchase?
23  **A.**   I think maybe a 20.
24  **Q.**   $20 worth of what?
25  **A.**   Crack.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3566

1   **Q.**   Now, did you -- was there a third time you go back to
2   that same area?
3   **A.**   Yes.
4   **Q.**   And what were you looking to do that third time?
5   **A.**   The same thing.
6   **Q.**   What did you see that third time?
7   **A.**   I saw the van.
8   **Q.**   Did you approach the van?
9   **A.**   Yes.
10  **Q.**   What happened when you approached the van?
11  **A.**   He said he didn't know me.
12  **Q.**   You saw somebody in it?
13  **A.**   Yes, I did.
14  **Q.**   How many persons did you see?
15  **A.**   I don't remember how many people. I wasn't looking for a
16  lot of people, I was just looking for one person.
17  **Q.**   Who in particular were you looking for?
18  **A.**   Well, the young lady that told me his name was Boy-Boy.
19           MS. WICKS: Objection, Your Honor.
20           MR. ZUCKER: Objection, Your Honor. Motion to strike.
21           THE COURT: Mr. Guerrero?
22           MR. GUERRERO: I can withdraw that answer, Judge.
23           THE COURT: All right.
24  BY MR. GUERRERO:
25  **Q.**   Without telling us what the young lady said, when you go

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3567

1   back to the van, you're looking for one person in particular?
2   **A.**   I'm looking for who I can get some drugs from.
3   **Q.**   And do you approach anyone in particular?
4   **A.**   Well, I approached the driver.
5   **Q.**   And what did you ask the driver?
6   **A.**   Did he have anything?
7   **Q.**   Did the driver ever say who he was?
8   **A.**   No.
9   **Q.**   And what did the driver say to you?
10           MR. BEANE: Objection, Your Honor, hearsay.
11           MR. GUERRERO: I think I went to fast. I can lay some
12  more foundation.
13  BY MR. GUERRERO:
14  **Q.**   That person who was the driver that day -- we're talking
15  about the third time you approached the van -- after that day,
16  did you later see that person again?
17  **A.**   After that day?
18  **Q.**   Yes.
19  **A.**   Yes.
20  **Q.**   And how often would you see that person after that day?
21  **A.**   Maybe twice a week.
22  **Q.**   And did you get to know who that person was?
23  **A.**   Yes, I did.
24  **Q.**   Did you get to know who that person was by a name or a
25  nickname?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3568

1  A.   I knew his name as Boy-Boy.
2  Q.   Now, back now to that third time, when you approach that
3  van and you approach the driver, that person you later know to
4  be whom?
     A.   Boy-Boy.
6  Q.   And what was it that you heard Boy-Boy say to you when
7  you asked him for drugs?
8  A.   He told me he didn't know me.
9  Q.   What did you say?
10 A.   I asked him, did he have anything? He told me, get away
11 from the van, he didn't know me.
12 Q.   Did you happen to see how many people were in the van?
13 A.   No, I didn't.
14 Q.   Did you happen to see anybody else in the van?
15 A.   I wasn't paying attention. I was trying to get drugs.
16 Q.   What happened then that day? How did that encounter end?
17 A.   I left.
18 Q.   Did you -- did you later see this person again?
19 A.   Yes.
20 Q.   When did you see him again?
21 A.   I kept bugging him.
22 Q.   How often did you keep bugging him?
23 A.   I guess about two days, two or three days.
24 Q.   And eventually, do you ever purchase any crack cocaine
25 from that person?

Scott L. Wallace, RDR, CRR
Official Court Reporter

3569

1  A.   Yes, I did.
2  Q.   And that person that you purchased crack cocaine from was
3  Boy-Boy?
4  A.   Yes.
5       MR. ZUCKER: Objection, form.
6       THE COURT: Sustained.
7  BY MR. GUERRERO:
8  Q.   Is this the same person that we talked about that was in
9  the van?
10 A.   Yes.
11 Q.   And that person during the time that you purchased crack
12 cocaine from him, did you learn his name?
13 A.   No, I didn't. His name? No, I didn't.
14 Q.   How about his nickname?
15 A.   Only name I knew him by was Boy-Boy.
16 Q.   How often would you buy from Boy-Boy?
17 A.   Maybe twice a week.
18 Q.   And let's break this down. When you first meet this
19 person Boy-Boy, you talk about these encounters in the alley.
20 What year was it, approximately?
21 A.   I do not remember the year.
22 Q.   Let's use a benchmark as right around the time when you
23 first moved to Congress Place.
24 A.   Not when I first moved there, no.
25 Q.   Was it soon after or more, time-wise?

Scott L. Wallace, RDR, CRR
Official Court Reporter

3570

1  A.   It was more time later on, because I was getting drugs
2  from elsewhere.
3  Q.   I can't hear you.
4  A.   I was getting drugs from elsewhere.
5  Q.   Okay. So was it a year later? Two years later? You
6  said you moved to Congress Place like in '99?
7  A.   Yes, I moved to Congress Place in '99. Congress Place.
8       Shoot, probably 2001 or something.
9  Q.   All right. And then once you have these encounters with
10 this person Boy-Boy, you said then that you later started to buy
11 from him?
12 A.   Yes.
13 Q.   And how often would you buy from him?
14 A.   Maybe about twice a week.
15 Q.   Twice a week?
16 A.   Yes.
17 Q.   What quantities would you buy from him?
18 A.   Sometimes I might get a dime from him. Sometimes I might
19 get a 20. Sometimes I might get a 50, 50 (sic) dime bags.
20 Q.   And a dime bag is worth how much money?
21 A.   $10.
22 Q.   So 50 dime bags would be worth?
2  ).   Not 50 dime bags.
24 Q.   I'm sorry. Ten dime bags would be worth?
25 A.   Five dime bags.

Scott L. Wallace, RDR, CRR
Official Court Reporter

3571

1  Q.   Five dime bags would be worth?
2  A.   $50.
3       THE COURT: We've actually reached the mid-morning break
4  point. Did you want to finish this line?
5       MR. GUERRERO: Now is a perfect time, Judge.
6       THE COURT: Ladies and gentlemen, we'll break for our
7  mid-morning break. Please remember, don't talk about the case
8  and leave your notes back in the jury room and turn off your
9  headsets and leave those in your seats.
10      And we'll see you back in 15 minutes at 11:15. Enjoy your
11 break.
12      (Jury out at 11:01 a.m.)
13      THE COURT: Ms. Proctor, you may take a break as well. I
14 would ask that you be back in your seat at 11:15 to resume your
15 testimony.
16      THE WITNESS: Okay.
17      THE COURT: I'll see you in 15 minutes.
18      MR. GUERRERO: Thank you, Your Honor.
19      (Thereupon, a break was had from 11:02 a.m. until
20 11:16 a.m.)
21      THE COURT: Ms. Proctor, you may take your seat.
22      Are you ready?
23      MR. GUERRERO: Yes, Your Honor.
24      THE COURT: All right.
25      (Jury in at 11:17 a.m.)

Scott L. Wallace, RDR, CRR
Official Court Reporter

3572

1    THE COURT: Good morning again, ladies and gentlemen.

2    THE JURY PANEL: Good morning.

3    THE COURT: Welcome back, we're ready to resume.

4    Counsel.

5    MR. GUERRERO: Thank you, Your Honor.

6  BY MR. GUERRERO:

7  **Q.**   Ma'am, I think we left off on the type of quantities that

8  you used to purchase from this person that you knew as Boy-Boy,

9  back when you were living at Congress Place. And I think we

10  left off with, if you buy five dime bags, that would be worth

11  how much?

12  **A.**   $50.

13  **Q.**   And were you working at the time, ma'am?

14  **A.**   No.

15  **Q.**   How were you affording to sustain the crack cocaine

16  purchases?

17  **A.**   I would have friends come to my house, and we would play

18  cards, and they might want to get some drugs.

19  **Q.**   Would you speak up?

20  **A.**   I said, I would have friends come to my house and we

21  would play cards and they might want to buy drugs.

22  **Q.**   And would you pitch in with your friends to purchase the

23  crack cocaine?

24  **A.**   If I had -- if I had a couple of dollars, yes. But if I

25  didn't, I couldn't. They would have the money, basically.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3573

1  **Q.**   And how would you get in contact with this person

2  Boy-Boy, when you wanted to purchase crack cocaine from him?

3  **A.**   I would walk to the park or call him.

4  **Q.**   Do you recall the particular number that you used to

5  call?

6  **A.**   No, not really.

7  **Q.**   Would looking at your grand jury testimony help refresh

8  your memory?

9  **A.**   Yes.

10  MR. GUERRERO: May I approach?

11  THE COURT: Yes.

12  MR. GUERRERO: I believe this is an add-on, Your Honor,

13  Government's Exhibit 1208.

14  BY MR. GUERRERO:

15  **Q.**   Ma'am, I'm handing you what's been marked as Government's

16  Exhibit 1208. Do you recognize what this is?

17  **A.**   My grand jury testimony.

18  **Q.**   And you testified in the grand jury on what date?

19  **A.**   August the 4th, 2005.

20  **Q.**   If you would, ma'am, please turn to page 17. Just let me

21  know when you get to page 17.

22  **A.**   Yes.

23  **Q.**   And if you look at -- read to yourself, not out loud --

24  lines 7 and 8 to yourself.

25  **A.**   Yes.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3574

1  **Q.**   Okay, if you could put down Government's Exhibit 1208

2  now, put it down. Do you now remember, is your memory refreshed

3  about the number you used to use to call Boy-Boy?

4  **A.**   Yes.

5  **Q.**   What number was that --

6  **A.**   Looking at this paper, yes.

7  **Q.**   What number was it?

8  **A.**   1-323-330-5864.

9  **Q.**   And when you called that number, who would respond?

10  **A.**   Boy-Boy.

11  **Q.**   And what would you ask of this person named Boy-Boy?

12  **A.**   Can I see him.

13  **Q.**   And would he show up?

14  **A.**   Sometimes.

15  **Q.**   Where would you and he meet?

16  **A.**   He might come to my house or I might go to him.

17  **Q.**   How often would you say you used to call Boy-Boy at that

18  number?

19  **A.**   About two or three times a week.

20  **Q.**   For what purpose?

21  **A.**   For cocaine; for crack.

22  **Q.**   If you saw this person Boy-Boy again, would you recognize

2   who he is?

24  **A.**   Yes, I would.

25  **Q.**   Do you see this person that you know as Boy-Boy in the

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3575

1  courtroom today?

2  **A.**   Yes.

3  **Q.**   And I'd ask you to, please -- if you need to, you can

4  stand up -- if you see this person named Boy-Boy, that you know

5  as Boy-Boy, in the courtroom, identify him by where he's seated

6  and an article of clothing.

7  **A.**   In the second row behind the guy in the purple shirt. He

8  has on --

9  **Q.**   Speak louder, please.

10  **A.**   He's behind the guy in the purple shirt.

11  **Q.**   What's he wearing?

12  **A.**   Gray shirt.

13  **Q.**   What else?

14  **A.**   I don't -- and a tie.

15  **Q.**   What color is the tie?

16  **A.**   It looks like navy blue or black.

17  **Q.**   Point him out please, with your hand. Point to where

18  he's sitting.

19  **A.**   That's him, (indicating).

20  MR. GUERRERO: I would note an in-court identification of

21  Boy-Boy, for the record.

22  MR. BEANE: No objection.

23  THE COURT: That request is granted.

24  BY MR. GUERRERO:

25  **Q.**   Now, ma'am, in addition to Boy-Boy, did you also purchase

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3588

1  Q.   And it's fair enough, when Jay would sell you, it was Jay
2  that actually did the sale to you, right?
3  A.   Yes.
4  Q.   And when this person Boy-Boy, whoever the other person
5  was, he directly sold to you as well, right?
6  A.   Yes.
7  Q.   It wasn't someone else running for them, was it?
8  A.   No.
9  Q.   It was individual seller and you were the individual
10 buyer, correct?
11 A.   Correct.
12      MR. PURPURA: No further questions.
13      THE COURT: All right. Anything else?
14      MR. GUERRERO: Yes, Your Honor.
15      REDIRECT EXAMINATION OF MARILYN PROCTOR
16 BY MR. GUERRERO:
17 Q.   I'll start with Mr. Purpura's last cross-examination
18 there.
19      He asked you if your concern was quality, you wanted good
20 stuff?
21 A.   Correct.
22 Q.   And was that one of the motivating factors to why you
23 always went to Boy-Boy, because he had good stuff?
24 A.   Yes.
25 Q.   And Mr. Beane then asked you, the last time you actually

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3589

1  purchased from Boy-Boy, do you remember that question?
2  A.   Yes. I do.
3       MR. GUERRERO: Court's indulgence.
4  BY MR. GUERRERO:
5  Q.   And you said in response to that question, it was
6  sometime in 2004?
7  A.   And it was, because he told me he wasn't selling drugs no
8  more.
9  Q.   Let me show you Exhibit 1208.
10      MR. ZUCKER: Page, please.
11      Can we ask for a citation, please, for the grand jury
12 testimony?
13      MR. GUERRERO: Page 15, lines 23 to 25 -- 24, rather.
14 Just to be specific as to what time in 2004, read those lines to
15 yourself, lines 22 to 24.
16      THE WITNESS: Yes.
17 BY MR. GUERRERO:
18 Q.   Is your memory a little bit clearer about the specific
19 time in 2004?
20 A.   Yeah.
21 Q.   And what do you recall the last time that you purchased
22 from Boy-Boy, the approximate time frame?
23 A.   It had to be in December of 2004.
24 Q.   And on line 23?
25      MR. BEANE: Objection, Your Honor. May we approach?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3590

1       THE COURT: Yes.
2       (Following sidebar discussion had on the record:)
3       MR. BEANE: I think Mr. Guerrero is trying to impeach and
4  the witness is not inconsistent with this statement.
5       THE COURT: Impeach what?
6       MR. BEANE: He was trying to refresh her with this
7  statement, but it's not inconsistent with what was said in the
8  grand jury.
9       THE COURT: It doesn't have to be inconsistent to refresh.
10      MR. BEANE: Well, he just showed it to her and she just
11 gave the answer, and so at that point, there's no need to impeach
12 or refresh. She just gave the answer again.
13      THE COURT: So what is the objection?
14      MR. BEANE: That if he's going to impeach and it sounds
15 like he is, because he's approaching. It's improper at this
16 point.
17      THE COURT: Overruled. I don't know whether he has
18 successfully refreshed her recollection. I don't know what
19 you're objecting to him doing, because he hasn't done anything.
20      MR. BEANE: Okay.
21      (Sidebar discussion concluded.)
22 BY MR. GUERRERO:
23 Q.   All right, ma'am. On that same note, there on lines 23
24 and 24, you give an approximate time range. Is your memory
25 refreshed?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

3591

1  A.   A time range. I see it says, in December 2004 or
2  January --
3       MR. BEANE: Objection, Your Honor.
4       THE WITNESS: -- of 2005.
5       THE COURT: Hold on one second.
6       MR. BEANE: Same -- at this point, objection to reading
7  the transcript.
8       THE COURT: Come on up.
9       (Following sidebar discussion had on the record:)
10      THE COURT: What is your question to her now?
11      MR. GUERRERO: Is her memory refreshed with regard to the
12 specific time period, not just 2004, but in the grand jury she
13 has a specific recollection of December 2004 or leading into
14 January 2005, and it wasn't that crystal clear on
15 cross-examination. She just said 2004.
16      THE COURT: Well, you're trying to refresh recollection
17 without having laid the foundation that she doesn't remember. So
18 I don't know if you're trying to do that or impeach. Whatever
19 the foundation that it's required for, either of those two has
20 not been laid. So the objection is sustained.
21      (Sidebar discussion concluded.)
22 BY MR. GUERRERO:
23 Q.   Ma'am, you recall testifying in the grand jury, do you
24 not?
25 A.   Yes.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**3592**

1  **Q.**  And that happened back in August of 2005? Look at the
2  cover page of --
3  **A.**  Yeah, I guess it was -- yeah, 2005, yeah.
4  **Q.**  And you agree with me that in August of 2005, your memory
5  as a little bit clearer about what you talked about in the
6  grand jury?
7  **A.**  Yes.
8  **Q.**  And would looking at this particular document refresh
9  your recollection, specifically as to the time period --
10  **A.**  You're talking about the same page, 15 --
11  **Q.**  Yes. Let me just finish the question.
12  **A.**  Okay.
13  **Q.**  -- specifically about the time period that you recalled
14  last purchasing crack cocaine from Boy-Boy?
15      MR. BEANE: Objection, Your Honor. She's already been
16  refreshed and given an answer.
17      THE COURT: Sustained.
18      MR. GUERRERO: Court's indulgence.
19  BY MR. GUERRERO:
20  **Q.**  Sitting here today, Ms. Proctor, do you recall, just off
21  the top of your head, when it was exactly that you purchased
22  crack cocaine from Boy-Boy, the last time?
23      MR. BEANE: Objection, asked and answered.
24      THE WITNESS: I can't remember.
25      THE COURT: Phrased in that way, it's sustained. I'll let

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**3593**

1  you rephrase.
2  BY MR. GUERRERO:
3  **Q.**  Do you recall when the last time it was that you
4  purchased from Boy-Boy, crack cocaine?
5      THE COURT: Sustained, because of the vagueness of the
6  word "time." You haven't focussed in beyond the question that
7  was already asked and answered. So, it's sustained. I'll let
8  you rephrase.
9  BY MR. GUERRERO:
10  **Q.**  I would like to focus your attention back to 2005.
11  **A.**  Yes.
12  **Q.**  2005. Do you ever have a recollection back in 2005 of
13  purchasing crack cocaine from Boy-Boy?
14  **A.**  I really don't remember. I think -- it might have been
15  in 2004.
16  **Q.**  All right. Would looking at your grand jury refresh your
17  testimony?
18  **A.**  But the grand jury says December 2004.
19      MR. BEANE: Objection, Your Honor.
20      THE COURT: Hold on. When there's an objection, I need to
21  hear it.
22      THE WITNESS: All right. I'm sorry.
23  BY MR. GUERRERO:
24  **Q.**  You said you don't recall.
25  **A.**  No, I don't.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**3594**

1  **Q.**  I'm asking, can you refresh your memory by looking at
2  page 15 of the grand jury?
3      MR. BEANE: Objection, Your Honor.
4      THE COURT: Overruled.
5  BY MR. GUERRERO:
6  **Q.**  Page 15 of the grand jury, the end of line 23 and 24.
7      THE COURT: With instructions to read it to yourself and
8  not out loud.
9      THE WITNESS: Okay.
10      THE COURT: Okay.
11      THE WITNESS: Yes, I remember.
12  BY MR. GUERRERO:
13  **Q.**  Now you remember possibly purchasing crack cocaine from
14  Boy-Boy in 2005?
15      MR. BEANE: Objection.
16      THE COURT: Overruled.
17      THE WITNESS: No, I don't. I can't -- can't remember.
18  BY MR. GUERRERO:
19  **Q.**  Okay. You can't remember?
20  **A.**  No.
21  **Q.**  Do you recall in the grand jury saying that you had
22  purchased crack cocaine?
23      MR. BEANE: Objection.
24      THE COURT: Overruled.
25  BY MR. GUERRERO:

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**3595**

1  **Q.**  Lines 22 through 24, page 15; and I would like you to
2  follow along, okay?
3  **A.**  Okay.
4  **Q.**  I'm on line 22. The sentence starting?
5      MR. ZUCKER: Judge, objection to the --
6      THE COURT: This is not your cross-examination, is it?
7  BY MR. GUERRERO:
8  **Q.**  "I recall that the last time that I bought crack cocaine
9  was in December 2004 or January 2005 from Boy-Boy."
10      MR. BEANE: Objection, Your Honor, that is consistent with
11  her testimony.
12      THE COURT: Overruled.
13  BY MR. GUERRERO:
14  **Q.**  Did I read that right?
15  **A.**  You're reading it right. Yes, you are.
16  **Q.**  Thank you.
17      MR. GUERRERO: Nothing further, Your Honor.
18      THE COURT: Thank you very much. You may be excused.
19      THE WITNESS: Thank you.
20      THE COURT: You may retrieve your exhibit.
21      You may announce your next witness.
22      MR. GUERRERO: Court's indulgence. I just want to make
23  sure I announce the right person.
24      THE COURT: Announce your next witness.
25      MS. PETALAS: United States calls Agent Robert Lockhart to

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*