IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | :  Criminal No.: 05 – 100 - 3 (RWR) |
| | : |
| GREGORY BELL | : |
| | : |
| Defendant | : |

SUPPLEMENTAL SENTENCING MEMORANDUM

Defendant, Gregory Bell, through undersigned counsel, respectfully submits this memorandum to aid the Court in sentencing.

BACKGROUND

Mr. Bell was charged via indictment with, *inter alia,* violating 18 USC §1962(d); commonly known as the RICO statute the RCIO Conspiracy and with Conspiracy to possess and distribute 50 grams or more of cocaine base in violation of 21 USC §846 and 21USC §841, *et seq*. The indictment also charged Mr. Bell with multiple counts of various drug related crimes. After ten months of trial in which the jury heard evidence from the government and Mr. Bell the jury deliberated several weeks of and acquitted Mr. Bell of all but three counts that involved the distribution of small quantities of crack cocaine.

The government presented multiple witnesses during the trial in this matter and Mr. Bell presented several witnesses in his defense. The government also presented an audio tape recording of a conversation between Mr. Bell and the mother of his child. Mr. Bell can be heard to say that he had a right to go to Ms. O'Brien's house to ask about the murder that had

happened the evening before.

The government witnesses all claimed that Mr. Bell sold them large quantities of crack cocaine. Significantly, not one of the government's witnesses could provide a time or date on which Mr. Bell allegedly sold them crack cocaine. Two government witnesses, Mr. Charlotte O'Brien and Ms. Brittney O'Brien both testified that they had known Mr. Bell for some time and they had never been or felt threatened by Mr. Bell. Ms. Brittany O'Brien testified on June 18 and Ms. Charlotte O'Brien on Ms. Donneattrice Brown testified on July 17 and 18. Although she testified that she was threatened by Mr. Bell and others, she didn't say why she was threatened. She in no way said the threats were related to her becoming a witness, reporting crimes or anything related to the administration of justice.

The government presented testimony that Mr. Bell had possessed a gun. Ultimately, Mr. Bell's father, Raymond Bell, came into court and testified that gun the government was attributing to Mr. Bell was in fact his. This was not the first time Mr. Raymond Bell reported to the government that the weapon in question belonged to him and not his son. Based on the statements of Mr. Bell at the time of the offense as well as during a interview with government agents the United States Attorney's Office did not prosecute Mr. Gregory Bell. Mr. Bell testified on September 12.

Mr. Bell also presented a number of witnesses, former employers, a Officer Bruce Faison, September 12, Raymond Bell, Gregory Bell's father, Linda Sweet, August 27, and William Mc Ewen, September 12. Mr. Bell called these witnesses to counter the government's witnesses. However, he was limited in his ability to defend himself because so much of the government's case was based on witness testimony that provided no specifics, such as date and time.

ARGUMENT

Although this memorandum is meant to supplement the memorandum in aid of sentencing that Mr. Bell filed last week, counsel believes that it will make the analysis of Mr. Bell's legal arguments easier to follow if counsel simply leaves the references to the legal authority Mr. Bell relies upon in the body of this memorandum.

The factors to be considered by the court at the time of sentencing are found at 18 U.S.C. 3553 this Court must consider the following factors as it imposes a sentence upon Mr. Bell, (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed, considering that the sentence should reflect the seriousness of the offense such that it promotes respect for the law and provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (3) the kinds of sentences available and (4) the kinds of sentences and the sentencing range established by the sentencing guidelines.

The Court must consider the Federal Sentencing Guidelines, however as the Court knows the guidelines are no longer mandatory, and the Court is free to impose a sentence unfettered by the voluntary guidelines.

<u>The Nature and Circumstances of the offense:</u>

Mr. Bell was found guilty of Counts 5, 9 and 12.  Count 5 alleged unlawful distribution of crack cocaine, 2.5 grams, on June 5, 2000, Count 9 alleged unlawful distribution of crack cocaine, 1 gram on July 27, 2000, and Count 12 alleged unlawful distribution of crack cocaine, 1.5 grams on November 16, 2000.  Combined Mr. Bell was

found guilty of distributing 5 grams. Significantly, there were no violence or weapons involved in counts 5, 9 and 12. Although the government considers the crimes for which Mr. Bell was acquitted as part of the nature and circumstances of the offense they're position is without merit. While the government is free to argue that the acts of the alleged conspiracy should be considered as relevant conduct under the guidelines, 18 U.S.C. 3553 requires that the Court considers that fact and circumstances of the convicted conduct.

<u>The history and characteristics of the defendant</u>

Mr. Bell has one prior conviction from many years ago. He was sentenced under the Youth Rehabilitation Act. Since that time Mr. Bell has no convictions. However, since his youth Mr. Bell has lived and worked legitimate jobs in the Congress Park neighborhood. Contrary to the government's assertions Mr. Bell lived there with his mother, at times with his father and other times with the mothers of his children. As testified to by credible witnesses, Mr. Bell began working in Congress Park several years ago. He started out by selling clothes from the back of his van. Later he worked with a security company and then worked with construction crews that were working to revitalize the Congress Park neighborhood. The government sponsored witnesses of worse kind to attempt to prove that Mr. Bell was part of their conspiracy. Mr. Bell used the money he legitimately earned to care for and support his children and their mothers. Mr. Bell presented several witnesses on his behalf, much of what these witnesses had to say about Mr. Bell and his character was objected to by the government. As a result much of what these witnesses had to say about Mr. Bell was kept from the court. As several of the witnesses attempted to say at trial, Mr. Bell worked very hard to help "fix up" Congress Park. As mentioned earlier he worked with construction crews who were working to revitalize Congress Park. He also started his own tow truck business

using the money he received from a lawsuit to purchase two tow trucks.  He also used a portion of the money he received in the lawsuit to pay for playground equipment that he and others used to construct a playground.  If permitted Mr. Bell's witnesses would have told the Court about the many positive things Mr. Bell contributed to Congress Park.

<u>The Need for the Sentence Imposed</u>

The government is asking that this Court sentence Mr. Bell to 292 months of incarceration, for distributing 5 grams of crack cocaine.   They claim that such a draconian sentence is justified by conduct they failed to prove.  This Court should not impose such a sentence where a jury has rejected the government's claims.  To do so would be to supplant the jury's judgment with that of the assistant united states attorneys, who decide what charges to bring.

The government seeks in excess of a 20 level enhancement of the Federal Sentening Guidelines.  This request is not supported by the facts of this case nor the law. See, *United States v. Jordan*, 256 F.3d 922, 927-28 (9th Cir. 2001); See also *United States v. Dare*, 425 F.3d 634 (9th Cir. 2005); *United States v. Watts*, 519 U.S. 148, 156 (1997); and *Gall v. United States*, 128 S. Ct. 586 (2007).

Pursuant to *Gall* in determining the appropriate sentence a federal district court should follow these procedures.

The district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range.  In an attempt to secure nationwide consistency in sentencing the guidelines should be the starting point and the initial bench mark.

However, the Guidelines are not the only consideration. *Id.* at 596.

Subsequent to both parties arguing for whatever sentence they deem appropriate, the District Judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by the party. In so doing, Court may not presume that the Guidelines' range is reasonable. The Court must make an individualized assessment based on the facts presented the instant circumstances *Id.* at 596-597.

Where the Court decides that an "outside-Guideline" sentence is warranted, the Judge must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* at 597. After determining an appropriate sentence, the Court must adequately explain the sentence it will impose to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id.*

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that while a district court must include in its consideration the guideline range as well as an array of factors and give respectful consideration to the guidelines, and the Court may vary its sentence based solely on policy considerations, including disagreements with the Guidelines. Thus, the Court is not bound to follow the guidelines and does not have to impose a sentence based on acquitted conduct and the Court.

Mr. Bell objected to the Probation Officer's calculation of the base offense level as it robotically uses "relevant conduct" in its calculation. Mr. Bell also objected the Probation Officer's enhancements that are based exclusively on the testimony of government witnesses and allegations. Mr. Bell draws the Court's attention to both the United States and the Probation Officer's inclusion of an enhancement for obstruction of justice based on the testimony of the O'Brien's – Brittany and Charlotte. At trial both O'Briens stated clearly that they were not intimidated by Mr. Bell. Further the United States played a tape recorded

conversation of Mr. Bell speaking to the mother of his child on his child's birthday.  Mr. Bell can be heard to say that he went to the O'Brien's to ask Brittany if she knew about the shooting.   This tape was moved into evidence by the government.  Mr. Bell lodged additional objections and accordingly maintains that the proper guideline level for is Level 24.

Further, Mr. Bell's witnesses, former detective Bruce Faison and Linda Sweet and William McEwen contradict the government's witness regarding the activities of Mr. Bell.  The Court will recall the number of witnesses called by the government to implicate Mr. Bell in its alleged conspiracy.  Each witness all said the same thing: "Boy Boy sold me weight."  Not one of the witnesses could provide Mr. Bell a date or time on which Mr. Bell supposedly sold them crack cocaine.  Further, their testimony was extraordinarily similar in both in the level of detail or lack thereof and their brevity.  The introduction of such testimony to prove Mr. Bell committed a crime is simply unfair.  It is axiomatic that the Confrontation Claus of the Sixth Amendment to the United States Constitution requires that in a criminal case be allowed to confront a witness against him.  *Davis v. Alaska*, 415 U.S. 308 (1974).  The ability to cross-examine a witness must be a meaningful one.  When the government is permitted to simply put forth witness after witness who mechanically give a broad statement when prompted – "What about Boy Boy, did Boy Boy sell you crack," asked multiple times by government counsel.   To enhance Mr. Bell's sentence based on such vague assertions is to punish him unfairly.

In *United States v. Watts*, 519 U.S. 148 (1997) The Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 157.  However, the Supreme Court does not mandate the use acquitted

conduct. In any event the acquitted conduct must be underlying conduct not all conduct the government claims Mr. Bell has committed over the course of his life.

This Court must consider that under the government's theory the Court should sentence Mr. Bell to a sentence at least six times the length of sentence called for under the guidelines. The government bases its request on the massive quantity of drugs attributable to Mr. Bell by the government's witnesses. Importantly, the Probation Officer also bases his inclusion of acquitted conduct in his calculation on the government witnesses. Neither the Probation Officer or the government consider the testimony of Mr. Bell's witnesses. Mr. Bell's witnesses who had absolutely no reason to fabricate their testimony all uniformly said that Mr. Bell was not in the circle selling crack cocaine.

Whether the witnesses had a reason to fabricate their testimony is one of the most important considerations in a case such as this where the government has absolutely no physical evidence to support the assertions of its witnesses. Almost without exception, each of the government's witnesses where testifying to obtain reduced sentences. Mr. Bell's witnesses had no such motivation. Their testimony was certainly far more credible than that of the government's witnesses. In fact, Mr. Bell is never seen in the video taped recordings presented by the government.

The government bears the burden of producing evidence from which the district court can make a reliable finding. United States v. Sumner, 325 F.3d 884, 890 (7th Cir. 2003). The government has certainly failed to do produce reliable evidence. Each of the witnesses relied upon by the government to support a finding that Mr. Bell was in some way connected to the distribution 1.5 kilograms of crack were either crack addicts or were offering testimony in exchange for time off their potentially lengthy sentences.

There are, however other compelling reasons to deny the governments request to more than quadruple Mr. Bell's sentence.  Respect for our jurors who sat through eight months of trial, the belief in our society that you will only be punished for the crimes you are convicted of by a jury of you peers and the effects on our community when we permit the government to repeatedly strip our communities of its men and leave behind babies to fend for themselves.  A process that by the governments on admission that it has done in the Congress Park neighborhood on more than one occasion.

Agent Lockhart detailed for the Court the investigations that he has worked on over the years that led to multiple arrests and convictions in Congress Park and\or surrounding neighborhoods.  The young men involved in this case had older relatives, including fathers imprisoned.  There is little wonder that these young men were arrested for selling crack cocaine.  As their lives have taught them that they have few other choices.

Mr. Bell tried to take a different path.  He worked a legitimate job everyday, often working overtime.  He invested in the neighborhood by purchasing and playground set and helping to build it.  He bought two tow trunks with proceeds from a civil suit and tried to operate his own tow truck business.  As the testimony from the trial demonstrated that he work very hard to identify cars that needed to be towed from the property.  Mr. Bell has approximately 11, children that he was supporting prior to his arrest.  Should Mr. Bell be locked away from these children the cycle will begin again and in a few years a new set of prosecutors will before this Court asking his son's be incarcerated.  Mr. Bell was working to help rebuild Congress Park before he was ripped away from Congress Park.

Significantly, the majority of Americans believe that a person can only be incarcerated for a crime they have been convicted of by a jury of their peers.  Should this Court sentence

Mr. Bell to more than the 51 – 63 months called for by the guidelines based on the acquitted conduct then the Court will in fact be sentencing Mr. Bell based on allegations his jury rejected.

Moreover, in this case we have the unique benefit of hearing from a juror post verdict. In the letter submitted to the Court. The juror clearly states that he believes that if it hadn't been for the conspiracy charge many of the underlying charges would not have been brought. An insightful observation – and one that the defense team shared through much of the trial.

The danger of rewarding the government in this case by imposing a sentence based on relevant conduct/acquitted conduct is that the jurors request that cases like this no longer be brought will fall on deaf ears. The government brought these charges as a conspiracy because it knew, as the juror was able to glean, that it could not obtain a conviction for the conspiracy charges. But the government also knew that it did not have to get a conviction on the conspiracy charge in order to get the sentence it wanted. All the government had to do was allege the conspiracy then it could throw in any crime they wanted to against Mr. Bell and then rely on this Court give them what they wanted all along – a lengthy period of incarceration for crimes they could not prove. The government is doing just that. They are counting on this Court to quadruple Mr. Bell's sentence based on "snitch" testimony.

This request is even more sinister because of the unreliability of snitch testimony. According to a report by the Center on Wrongful Convictions at Northwestern University School of Law found that snitch-dependent prosecutions are a leading cause of wrongful convictions in capital cases. *The Snitch System: HowSnitch Testimony Sent Randy Steidl and other Innocent Americans to Death Row.* A survey of all cases involving individual later exonerated by DNA testing showed that in over fifteen percent of cases a jailhouse snitch

testified against the defendant.  This is significant because these few cases were overturned only because there was DNA that could be tested and prove that the snitches were lying.  There is such hope in this case.  Once Mr. Bell is sentenced based on the testimony of these snitches he will spend the rest of his life in jail.  Mr. Bell is 38 years old, should the court sentence him to 24 years he will not be released from jail until he is 60 years old.

    There is no legitimate reason to enhance Mr. Bell's sentence for obstruction of justice he neither intended to obstruct justice nor did he obstruct justice in any manner.  Further, as mentioned above the weapons on which the government relies for an enhancement should not be attributed to Mr. Bell.  In Paragraph 43 Kairi Kelliebrew testified that he had seen Mr. Bell with a gun since he was young.  Again no actual evidence this alleged weapon was produced and Mr. Kelliebrew is unreliable. Next the government points to the testimony of Robert Pough, in which he claims that Mr. Bell, David Wilson and "Fat Tony" robbed is sister and that Mr. Bell had a gun.  Mr. Pough claims that this alleged robbery happened in 1991/1992, sixteen years ago.  The Court should not rely upon this type of vague unsubstantiated testimony to add additional time to Mr. Bell's sentence.

    Accordingly, the court should not sentence Mr. Bell to 292 months but rather the Court should impose a sentence in a range consistent with Mr. Bell's offense level and criminal history - offense level 24 and a criminal history category of I.

    Respectfully submitted,

                                          _____
                                          James W. Beane, Jr.

                                          636 Baronne Street
                                          New Orleans, Louisiana, 70113
                                          202-257-3920

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Aid of Sentencing was served via the Court's ECF system this 5 th day of May, 2008, on Assistant United States Attorney, Glenn Leon.

_____

James W. Beane, Jr.