## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA** | : | |
| v. | : | Criminal No. 05-100-02 (RWR) |
| **DAVID WILSON,** | : | |
|   also known as Cool Wop | | |
|   also known as Cootie | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT DAVID WILSON'S SUPPLEMENT TO MOTION FOR CONSIDERATION OF STILL PENDING MOTIONS, FOR A NEW TRIAL AND FOR A JUDGMENT OF ACQUITTAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, herewith files this opposition to defendant Wilson's supplement to motion for consideration of still pending motions, for a new trial and for a judgment of acquittal. (**Document #1352**). In support of its opposition, the government files this motion and offers further arguments and authorities at a hearing on this matter.

### Factual and Procedural Background

After a lengthy trial in this case, defendant Wilson was convicted by a jury of the following charges: Distribution of Cocaine Base, in violation of 21 U.S.C. §841(a)(1) (counts 4, 6, 11, 18, 20, and 21); Distribution of 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(B)(iii) (counts 16 and 19); Unlawful Use of a Communications Facility, in violation of 21 U.S.C. §843(b) (count 55); and First Degree Murder while Armed, in violation of 22 D.C. Code §§2101, 4502 (counts 31 and 33).

Many of the legal and factual issues raised in the instant motion have already been briefed

by the parties in several previous submissions (specifically, defendant Wilson's motions docketed **#947**, **#986**, and **#1233** as well as the government's motions docketed **#955**, **#1025**, **#1234,** and **#1338**).

The government incorporates by reference those points and authorities cited in its previously-submitted memorandum, but also supplements the record by addressing herein each of the five (5) numbered points raised by defendant Wilson in his instant motion.

## Argument

Defendant Wilson's instant motion alleges discovery and *Brady* violations concerning the evidence relating to Wilson's convictions for the double-homicide of Ronnie "Squid" Middleton and Sabrina Bradley (counts 31 and 33). As an initial matter, it is worth stating that the government's proof against Mr. Wilson in this double-homicide was particularly strong. Indeed, no less than six separate witnesses testified at trial implicating Wilson in this murder: Bobby Capies; Kairi Kelliebrew; Torran Scott; Renee Cottingham; Patrice Johnson; and Steve Casper. *See generally* Government Mem. at **Docket #1234**, at 6-7, and **Docket #1338**, at 6-11. In addition, and as discussed more fully below, the purported disclosure violations alleged in Mr. Wilson's instant motion are either not *Brady* information, are misstatements of the evidence are duplicitive of other discovery previously disclosed to the defense, and/or address extremely minor parts of an overwhelming case of guilt against Mr. Wilson.

Accordingly, the government addresses each of the numbered paragraphs in Wilson's motion as follows:

*Paragraph 1:*

Wilson claims that the government committed a discovery violation because it did not turn over a WACIIS Report that memorialized a photo identification procedure conducted with government witness Patrice Johnson where she identified "Teenyman" as having been at the scene of the murder. This WACIIS Report also stated that "Tennyman" reported the murder to Ms. Johnson within minutes after witnessing the murder itself.

The Court will recall that Ms. Johnson testified at trial to among other things the following: (i) at the time of the murder, Johnson was asleep in her home, but she was awakened by 12-15 gunshots during the early morning; (ii) after hearing the gunshots, she walked to her window and saw her friend, "Teenyman" running down the street; (iii) a few minutes later, "Teenyman" came to her home in a very exited state; he seemed "shaky" and "nervous" and yelled: "call Sabrina"; (iv) "Teeneyman" then told Johnson that he had just been with Sabrina in Squid's Bronco; that two people with masks were shooting at the truck; and that he jumped out of a back window of the truck and escaped the gunfire. *See* 6/7/07 Trial Tr. at 14543-14593.[1] In other words, the WACIIS Report is consistent with Johnson's sworn trial testimony.

At no time, moreover, did the government present any evidence of the identification procedure that Wilson claims in his motion the government wrongfully failed to disclose to him.

Thus, the argument raised by Wilson in this section boils down to the following: somehow the government committed a discovery violation for failing to disclose an identification procedure that it never introduced at trial, and which completely is consistent with its theory of

---

[1] The Court will also recall that "Teenyman" was not available to testify at trial because he had died several years prior trial.

the case and consistent with the testimony of witnesses it presented at trial (and who are subject to cross-examination). Wilson cites no legal authority for his position. Indeed, his position holds no water.

*Paragraph 2:*

Attached hereto as Exhibit A is a copy of the unredacted May 13, 1999 interview summary of Bobby Capies to which Wilson refers in this section. As indicated in this document, Capies' account of the Middleton/Bradley murder is consistent with this portion of Capies' trial testimony, namely, the following: (i) Capies was incarcerated on the night of the murder of Mr. Middleton and Ms. Bradley; however, the day after the murder, Capies had called Antonio Roberson's (aka "LT") house from the D.C. Jail and both Roberson and David Wilson were there and spoke to Capies. (ii) On this first call, Wilson and Roberson told Capies about how he and Roberson committed the murder; specifically, LT first told Capies that he, Wilson and "Draino" (Antoine Draine) were "balling" the night before, but that they should not talk much more about this, since Capies was calling from an unsecure phone from the jail. (iii) After that, Capies testified how he was able to then place a second call from the "C&P Office" which he believed was not monitored. (iv) On this second call, Wilson answered the phone and boasted about how he, "LT" and "Draino" killed Middleton and Bradley. In short, Exhibit A is consistent with Capies' trial testimony.

Wilson also postulates that a set of handwritten notes (not provided by the government in the instant case, but presumably turned over in the *Edelin* trial) were the backup notes of an interview of Bobby Capies and therefore should have been turned over in the instant case. The government can represent to the Court that these handwritten notes reflect an interview of

another individual who was not Mr. Capies and in fact not someone who testified for the government at trial. In addition, the account of the Middleton/Bradley murder provided by this additional witness is consistent with the other evidence presented by the government at trial. In fact, the government has made reference to this additional witness in a previous submission to this Court. *See* Government Mem. **Docket #1234**, p.7, n.4 ("The government also has an additional sworn grand jury account of yet another witness who also implicates Wilson in this murder. This additional witness was not called at trial for reasons having nothing to do with credibility.").[2]

      Finally, Wilson falsely states that, "the government should not have blocked defense counsel access to information about his [Capies'] cooperation in the other cases in Superior Court and should have also disclosed information about his cooperation to the defense." Wilson, Mem at 2. This assertion is basely false. As an initial matter, the government did not block access to anything; rather, it filed an opposition motion to a motion that Wilson filed in Superior Court to gain access to Bobby Capies' underlying juvenile criminal matters. The government filed its opposition in Superior Court based not only on the long-standing principles of keeping juvenile matters under seal, *e.g. Walls v. United States,* 733 A.2d 424, 429-430 (D.C. 2001), but also as moot since at the time counsel for Wilson filed its motion in Superior Court, Mr. Capies had already completed his two-weeks of trial testimony and was exhaustively cross-examined by six defense attorneys for over a week. Government counsels' memory is that counsel for Mr. Wilson withdrew its motion in Superior Court, rather than exhaust its right to have the Superior

---

    [2]    The government can certainly make a copy of these unredacted notes available for the Court's *in camera* inspection, should the Court wish.

Court judge rule on the motion. Thus, Wilson's claim that the government somehow "blocked" access to information and fair cross-examination of Mr. Capies is absurd.

*Paragraph 3:*

The government attaches hereto as Exhibit B an unredacted copy of Detective Mike Will's June 14, 1999 running resume reflecting his interview of a confidential source regarding conversations that the source had with one of the three perpetrators of the Middleton/Bradley double-murder, Antonio Roberson (L.T.). As reflected in the unredacted report, Roberson's account of the double-homicide to this source is consistent with the government's theory of the murder as well as the evidence presented at trial. The government always argued that Roberson was the trigger-man, and that Wilson was the getaway driver. This write-up is consistent with this presentation of evidence.

*Paragraph 4:*

The alleged inconsistencies reflected in these two police reports: (i) are not inconsistencies at all, and (ii) even if they are, involve minor, tangential issues presented at trial which deal with non-ear or non-eyewitness testimony, but instead the accounts of police officers who responded to different parts of the crime scenes in this case.[3] In addition, the fact that one officer (Webb) heard Middleton state something at the police station, and another officer (Craig) did not, certainly does not mean that the statement never happened. Nowhere in these police reports does it make clear if these two officers were even present with Middleton at the same exact time during this very chaotic scene. In any event, these issues involve very minor portions

---

[3] In addition, Officer Craig was available as a witness at trial for the defense if it chose to call him.

of the proof against Wilson for this double-homicide.

*Paragraph 5:*

The point raised here rehashes an argument that Wilson has previously briefed and the government has already addressed at length (*see* **Docket # 1234**, at 4-6), namely, that after reviewing some of the discovery provided to the defense by the government many years ago, in connection with the case of *United States v. Tommy Edelin, et al,* Wilson has learned that there were alternative theories regarding who committed the 1993 murder of Maurice Doleman, aka Reecey. Otherwise put, many years ago, there were purportedly different theories (not facts, not evidence, but theories and rumors) regarding who might have committed a murder that was never charged in the instant case, and which Wilson was never convicted of, but rather which contributed to the motive for Wilson's commission of the Middleton/Bradley double-homicide five years later. As a matter of both fact and law, such alternative theories even if credited, do not constitute *Brady*, and do not in any way suggest that the outcome of this trial would have in any way been different.

As an initial matter, the alternative theories listed in Wilson's motion all appear to be second and third-hand hearsay statements, which constitute nothing more than street rumor. It is well established that such rumors are not *Brady. See Gibson v. United States,* 566 A.2d 473, 480 (D.C. 1989) ("to require disclosure information, must be more than 'street rumor'; it must reach the 'level of evidence'") (citation omitted); *see also United States v. Sedgwick,* 584 F.2d 1044, 1046 (D.C. Cir. 1978).

Secondly, to the extent the identity of the person who killed Reecey is relevant at all, it is only relevant as to who Wilson and his fellow co-conspirators *thought* had killed Reecey, not

who *actually* killed Reecey. Different witnesses – such as Bobby Capies and Torran Scott, for example – testified at trial that members of Congress Park blamed the 1-5 Mob generally, and Squid specifically, for Reecey's murder. To this end, the government presented different witnesses who talked about the ongoing beef between the 1-5 Mob and the Congress Park Crew which was sparked over the death of Reecey.

Third, this information is not probative at all with respect to who actually committed the August 17, 1998 double-homicide of Squid and Sabrina Bradley. Indeed, if this information is probative of anything, it is regarding who else might have committed a wholly-separate murder, five years earlier. If it is *Brady* at all, it is arguably *Brady* for another case, with other defendants, and another decedent.

## CONCLUSION

For the reasons set forth above and for other such reasons that may be made at a hearing on this motion, the government respectfully requests that the Court deny defendant Wilson's supplement to motion or consideration of still pending motions, for a new trial and for judgment of acquittal.

                                                Respectfully submitted,

                                                CHANNING PHILLIPS
                                                United States Attorney

                                                _____/s/_____
                                                GLENN S. LEON
                                                Assistant United States Attorney
                                                New York Bar
                                                ANN PETALAS
                                                555 4th Street, N.W., Room 5235
                                                Washington, DC  20530
                                                (202) 305-0174